UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**26-CR-60019-ALTMAN/STRAUSS**
CASE NO. _____

18 U.S.C. § 371
18 U.S.C. § 982(a)(2)(A)

UNITED STATES OF AMERICA

vs.

ROODY METELUS,

Defendant.
_____/

FILED BY____*BM*____D.C.

*Jan 26, 2026*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times material to this Information:

### The Small Business Administration, the COVID-19 Emergency, and the CARES Act

1.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted on March 27, 2020, to provide emergency financial assistance to Americans suffering economic harms from the COVID-19 pandemic. To achieve this goal, the CARES Act established new temporary programs and expanded existing programs administered by the United States Small Business Administration ("SBA").

### The Paycheck Protection Program

2.    One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses, self-employed individuals and certain organizations for job retention and other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

3.     Businesses and individuals could apply for PPP loans by submitting a PPP loan application (SBA Form 2483).  The PPP loan application required that the applicant acknowledge, through its authorized representative, the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.  In the PPP loan application, the applicant, through its authorized representative, had to state its: (a) average monthly payroll expenses, and (b) number of employees.  An employer's payroll expenses or a self-employed individual's income was used to calculate the loan amount, which was determined based on 2.5 times the average monthly payroll.  The payroll calculation included the wages or salary earned up to $100,000 per employee or self-employed individual.

4.     In addition, the applicant business had to provide documentation evidencing its payroll expenses, or in the case of an individual, his or her gross and net income.  Typically, the applicant business would supply tax return documents showing the amount of payroll taxes reported to the Internal Revenue Service ("IRS").  For a self-employed individual who filed income taxes using an IRS Form 1040 (an individual income tax return), the self-employment business income would be reflected on an IRS Schedule C.  IRS Schedule C was a form that taxpayers completed to report any earnings or losses arising from any business or a profession as a sole proprietor.

5.     The IRS Schedule SE was another tax form that may be attached to a Form 1040 for a self-employed individual, which calculated and reported the individual's self-employment tax.

6.     A PPP loan application had to be processed by a participating lender or the participating lender's delegee.  If a PPP loan application was approved, the lender funded the PPP loan using its own monies, which were fully guaranteed by the SBA.

7.     PPP loan proceeds were required to be used by the business on certain permissible expenses— employee payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed

the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

## The Defendant and Relevant Entity

8. Company 1 was a company headquartered in Virginia that offered tax preparation services to its customers. Company 1 offered individuals the ability to be franchisees, allowing them to operate a tax return preparation business using Company 1's trade name, service marks, software and method of operation.

9. Defendant, **ROODY METELUS**, was a resident of Broward County, Florida, who had a franchise agreement with Company 1 to operate a franchise located in Dania Beach, Florida.

10. Liberty Tax Service was a fictitious name registered in Florida that was used by **ROODY METELUS** to operate a tax return preparation business as a franchisee of Company1.

11. JRS Tax Services, LLC. ("JRS Tax Services") was a Florida corporation that owned the fictitious name, Liberty Tax Service. **ROODY METELUS** was an owner and officer of JRS Tax Services. At all relevant times, JRS Tax Services used the name Liberty Tax Service at a tax return preparation office located in Dania Beach, Florida.

12. Bank 1 was a financial institution headquartered in Oklahoma that was insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank 1 was an approved SBA lender of PPP loans.

13. Bank Processor 1 was a third-party company headquartered in North Carolina that supplied Bank 1 a platform for applicants to submit their PPP loan application information and supporting documents. Bank Processor 1's server was located in North Carolina. Bank Processor

1 utilized other third-party on-line platforms for applicants to sign the PPP loan application, which involved servers located in Virginia and Oregon.

## CONSPIRACY TO COMMIT WIRE FRAUD
### (18 U.S.C. § 371)

1.    Paragraphs 1 through 13 of the General Allegations section of this Information are realleged and incorporated by reference as though fully set forth herein.

2.    From in and around January 2021, through in and around January 2022, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

### ROODY METELUS,

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with co-conspirators known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the conspiracy for **ROODY METELUS** and his co-conspirators to unlawfully enrich themselves by, among other things: (a) preparing false and fraudulent applications and supporting documents on behalf of PPP loan applicants; (b) submitting and causing the submission of false and fraudulent PPP loan applications and supporting documents; and (c) receiving kickbacks from the loan applicants for the defendant's personal use,

4

the use and benefit of others, and to further the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.     **ROODY METELUS** operated a tax preparation business in which he offered existing Liberty Tax Service customers and others interested in applying for PPP loans (collectively "customers") his assistance with false and fraudulent PPP loan applications and supporting documentation.

5.     **ROODY METELUS** prepared false and fraudulent PPP loan applications on behalf of new and existing customers. **METELUS** prepared false and fraudulent tax forms, mainly IRS Schedules C, IRS Schedules SE, and Self-Employment Ledgers, that falsely and fraudulently represented the customers as self-employed with income-generating businesses in order to qualify for the PPP loans; when, in truth and in fact, the customers were not self-employed with income-generating businesses.

6.     Some of **ROODY METELUS'** customers were his co-conspirators, as they signed the PPP loan applications and Self-Employment Legers knowing that **METELUS** had prepared the loan documents using false figures and information. **METELUS** and his co-conspirators submitted and caused to be submitted false and fraudulent PPP loan applications and supporting documents to Bank 1 using Bank Processor 1. **METELUS** and his co-conspirators caused the false and fraudulent PPP loan applications to be transmitted via interstate wire communications to Bank 1, using Bank Processor 1.

7.     Based on the false and fraudulent PPP loan applications that **ROODY METELUS** and his co-conspirators submitted and caused to be submitted as part of this conspiracy, Bank 1

disbursed loan proceeds to bank accounts controlled by **METELUS'** customers via interstate wire transmissions.

8.     **ROODY METELUS** also assisted customers in submitting false and fraudulent PPP loan applications to other lenders after Bank 1 denied the false and fraudulent PPP loan applications that **METELUS** and his co-conspirators had submitted and caused to be submitted to Bank 1 on the customers' behalf.

9.     **ROODY METELUS** and his co-conspirators submitted and caused to be submitted false and fraudulent PPP loan forgiveness applications to Bank 1 and other lenders on behalf of customers, via interstate wire communications.

10.     **ROODY METELUS** received kickback payments from the proceeds of the false and fraudulent PPP loans that his customers received.

11.     **ROODY METELUS** and his co-conspirators used the proceeds from the fraud scheme for their own use, the use of others, and to further the conspiracy.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object and purpose, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1.     On or about February 14, 2021, **ROODY METELUS** prepared false and fraudulent documents (a 2019 IRS Schedule C, a 2019 IRS Schedule SE, and a Self-Employment Ledger for year 2020), to support a PPP loan application on behalf of A.W. that was electronically submitted from the Southern District of Florida to Bank Processor 1, which resulted in Bank 1 funding a PPP loan in the approximate amount of $17,525.

6

2.      On or about February 20, 2021, **ROODY METELUS** prepared false and fraudulent documents (a 2019 IRS Schedule C, a 2019 IRS Schedule SE, and a Self-Employment Ledger for year 2020), to support a PPP loan application on behalf of C.T. that was electronically submitted from the Southern District of Florida to Bank Processor 1, which resulted in Bank 1 funding a PPP loan in the approximate amount of $20,220.

3.      On or about March 2, 2021, **ROODY METELUS** prepared false and fraudulent documents (a 2019 IRS Schedule C, a 2019 Schedule SE, and a Self-Employment Ledger for year 2020), to support a PPP loan application on behalf of W.B. that was electronically submitted from the Southern District of Florida to Bank Processor 1, which resulted in Bank 1 funding a PPP loan in the approximate amount of $20,314.15.

4.      On or about March 3, 2021, **ROODY METELUS** prepared false and fraudulent documents (a 2019 IRS Schedule C, a 2019 Schedule SE, and a Self-Employment Ledger for year 2020), to support a PPP loan application on behalf of D.W. that was electronically submitted from the Southern District of Florida to Bank Processor 1, which resulted in Bank 1 funding a PPP loan in the approximate amount of $20,453.12.

5.      On or about March 6, 2021, **ROODY METELUS** prepared false and fraudulent documents (a 2019 IRS Schedule C, a 2019 Schedule SE, and a Self-Employment Ledger for year 2020), to support a PPP loan application on behalf of H.F.M. that was electronically submitted from the Southern District of Florida to Bank Processor 1, which resulted in Bank 1 funding a PPP loan in the approximate amount of $20,368.95.

6.      On or about March 13, 2021, **ROODY METELUS** prepared false and fraudulent documents (a 2019 IRS Schedule C, a 2019 Schedule SE, and a Self-Employment Ledger for year 2020), to support a PPP loan application on behalf of W.S. that was electronically submitted from

the Southern District of Florida to Bank Processor 1.  Bank 1 declined to approve and fund W.S.'s PPP loan application.

7.      On or about March 21, 2021, **ROODY METELUS** prepared false and fraudulent documents (a 2019 IRS Schedule C, a 2019 Schedule SE, and a Self-Employment Ledger for year 2020), to support a PPP loan application on behalf of K.W. that was electronically submitted from the Southern District of Florida to Bank Processor 1.  Bank 1 declined to approve and fund K.W.'s PPP loan application.

8.      On or about June 3, 2021, W.B. made one of several electronic funds transfers in the amount of $1,000, from his bank account to the bank account of **ROODY METELUS** as payment to **METELUS** for assisting in the submission of false and fraudulent first and second round PPP loan applications on behalf of W.B.

All in violation of Title 18, United States Code, Section 371.

### FORFEITURE ALLEGATIONS

1.      The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ROODY METELUS**, has an interest.

2.      Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 371, as alleged in this Information, the defendant shall forfeit to the United States any property, constituting, or derived from, proceeds the person obtained directly or indirectly as a result of such offense, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

3.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

8

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(2)(A), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 982(b)(2).

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

AIMEE C. JIMENEZ
ASSISTANT UNITED STATES ATTORNEY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: **26-CR-60019-ALTMAN/STRAUSS**

v.

ROODY METELUS

**CERTIFICATE OF TRIAL ATTORNEY**

_____ /
Defendant.

**Court Division** (select one)

- ☐ Miami
- ☐ Key West
- ☐ FTP
- ☑ FTL
- ☐ WPB

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I ☑ 0 to 5 days
   - II ☐ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV ☐ 21 to 60 days
   - V ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No

14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
Aimee C. Jimenez
Assistant United States Attorney
SDFL Court ID No.   A5500795

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ROODY METELUS

**Case No**: _____

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 371

\*Max. Term of Imprisonment:  5 years
\*Mandatory Min. Term of Imprisonment (if applicable):  N/A
\*Max. Supervised Release:  3 years
\*Max. Fine:  $250,000 or twice the gross gain or gross loss resulting from the offense.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. **26-CR-60019-ALTMAN/STRAUSS** |
| ROODY METELUS, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date:   12/18/2025

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*